490 P.2d 32

Frederick L. HOLLEY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Western Greyhound Lines, Division of the Greyhound Lines, Inc., Respondent Employer,

State Compensation Fund, Respondent Insurance Carrier.

No. 1 CA–IC 559.

Court of Appeals of Arizona,
Division 1.

Nov. 8, 1971.

Rehearing Denied Nov. 13, 1971.

Review Denied Jan. 18, 1972.

Lawrence Ollason and Bernard I. Rabinovitz, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by James E. McDougall, Phoenix, for respondents employer and carrier.

HATHAWAY, Judge.

This case is before the court by writ of certiorari to review the lawfulness of an

Award and Findings by The Industrial Commission entered 15 September 1970.* We must decide only whether the award finding that the petitioner suffered no permanent disability is reasonably supported by the evidence.

Petitioner, F. L. Holley, has been employed as a bus driver for approximately twenty-five years. On 13 February 1969 he filed a Workman's Claim for Compensation alleging that on or about 26 October 1968 he sustained an injury in the course of his employment. On 30 October 1968 he first saw Dr. J. E. Cook, a general practitioner, whose initial diagnosis of petitioner's condition was "perineal fistula." Dr. Cook, however, was not certain of the condition and arranged Holley's admission to Southern Pacific Memorial Hospital in San Francisco for further tests. Holley was hospitalized for about two weeks. As a result of test evaluation during this time, his condition was finally diagnosed as "hidradenitis suppurativa" (inflammation simulating boils). He returned to Phoenix and continued to be treated by Dr. Cook until 27 May 1969.

At the Fund's request Holley saw Dr. William E. Amos, a specialist in dermatology, in preparation for a compensability hearing held on 26 September 1969. He also saw a Dr. Mundall on 2 September 1969 for "the same problem." Neither doctor initiated treatment. He saw Dr. Cook again on 10 September 1969 but no treatment was given.

At the compensability hearing on 26 September 1969 the referee found that the petitioner had a pre-existing condition which was aggravated by prolonged driving and as such was a compensable injury. The Industrial Commission affirmed this finding. Subsequently, the Fund, in the course of administrative processing, learned that Dr. Cook had discharged the petitioner as fit for work on 27 May 1969. On the basis of Dr. Cook's report a Findings and Award for Temporary Disability was issued 19 January 1970. The award

was upheld on hearing before a referee on 27 July 1970 and by the Commission on 15 September 1970. This writ followed.

The petitioner did not present medical evidence at the 27 July 1970 hearing. He relies on the testimony of Dr. Amos given at the 26 September 1969 compensability hearing to establish his claim of permanent disability. At that hearing Dr. Amos characterized Holley's condition as "a chronic prolonged disease with recurrences of acute inflammation" and as a "chronic low-grade disability that persists * * *." Dr. Amos did not state a conclusive opinion regarding the temporary or permanent nature of the disability as of the time he examined Holley. Dr. Amos stated:

"I could not in any way predict how much disability he has at that moment or how much he would have in 24 hours on an acute basis which might last from a few days to a few weeks, but from history he has been able to return to work or did, and having seen the man for half an hour I can't answer all of the God-given answers that you want. If I had seen the man for a year and a half I could tell you more."

Dr. Cook, the attending physician, on the other hand, testified at the 27 July 1970 hearing that he had examined Holley on 27 May 1969. At that time he found the skin lesions "were quiescent and there was no activity and I returned him to duty the following day * * *." Dr. Cook was asked if on the date he discharged Holley there was any permanent condition which resulted from the aggravation, to which he responded: "In my opinion no."

The referee's opinion was that Dr. Amos' testimony, viewed as a whole, was impregnated with uncertainty and was susceptible of an interpretation that he was speaking more of possibilities than probabilities. Helmericks v. Airesearch Manufacturing Co. of Arizona, 88 Ariz. 413, 357 P.2d 152 (1960). We tend to agree. Further, the testimony of Dr. Amos

* This case was decided under the law as it existed prior to 1 January 1969.

reveals that he was aware of and concerned that Holley "has only but one year to go to retirement and everything I say beyond that essentially is an attempt to salvage him for his retirement." The trier of fact may consider not only the experience of the witness, but any interest or bias conscious or unconscious, in the result to be reached. Hewett v. Industrial Commission, 72 Ariz. 203, 232 P.2d 850 (1951). Nevertheless, petitioner argues that the evidence is conflicting and that State Compensation Fund v. Bannister, 13 Ariz. App. 354, 476 P.2d 875 (1970) requires conflicting medical evidence between a general practitioner and a specialist to be resolved in favor of the specialist's opinion. We disagree. The court in *Bannister* merely found that the Commission was the judge of the weight of the evidence. That opinion, if anything, supports respondent's position here. Further, the rule appears to be that where conflict exists an award based on the treating general physician's testimony will stand even if opposed by the testimony of several specialists. See 3 A. Larson, Law of Workmen's Compensation § 80.20, at 275 (1971).

Finally, petitioner claims that the referee substituted his opinion for that of the medical expert and the award must therefore be set aside. Hurler v. Industrial Commission, 13 Ariz.App. 66, 474 P.2d 73 (1970). The record clearly reveals that the referee's findings were supported by medical evidence. Holley suffered a compensable injury consisting of an aggravation of a pre-existing condition. This aggravation apparently cleared on 27 May 1969. The petitioner was unconditionally returned to his regular work. There was testimony his condition had not been permanently worsened by the aggravation. He did return to work. He had further problems and there were times he did not work. But there is no evidence that these subsequent problems related to the aggravation occurring in late October 1968, upon which the award was based. We believe

the evidence reasonably supports the finding of no permanent disability.

Affirmed.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.