. 492 P.2d 23

Nunzio V. MICUCCI, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Knoell Brothers Construction Company, Inc.,
Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. I CA–IC 603.

Court of Appeals of Arizona,
Division 1,
Department A.

Jan. 5, 1972.

Rehearing Denied Jan. 31, 1972.

Review Granted Feb. 29, 1972.

Spencer K. Johnston, Phoenix, for peti-
tioner.

William C. Wahl, Jr., Chief Counsel,
The Industrial Commission of Arizona,
Phoenix, for respondent.

Robert K. Park, Chief Counsel, by Cecil
A. Edwards, Jr., State Compensation Fund,
Phoenix, for respondent Carrier.

DONOFRIO, Judge.

This is a review by writ of certiorari of
the findings and award of The Industrial
Commission of Arizona finding that peti-
tioner had no physical or mental disability
causally related to his industrial accident.
The issue is whether the award is reason-
ably supported by the evidence.

On April 10, 1967, petitioner, a car-
penter, suffered an industrial accident
when he fell eight feet off a wall. He
suffered injury to his back, both knees
and both feet. The claim was duly ac-
cepted for benefits.

In May of 1968 petitioner suffered an-
other accident when he fell from a ladder
and injured the thoracic area of his back.
This accident was treated as an industrial
case in claim number BG 19669. As to
this injury he was discharged without
permanent disability, and this action of
the Commission is not questioned.

Petitioner has had a rather involved
medical history and it would serve no pur-
pose to set it forth in detail, and therefore
we state it only generally. He was seen,
treated and examined by several doctors
and during the period involved he returned
to different types of less strenuous work.
His progress was slow and there was, in
the words of one doctor, "the usual marked

amount of functional overlay." There is also evidence that petitioner had a pre-existing problem not attributable to his industrial accident. He also has gout and a degenerative disc change that was present prior to the accident. Right up to the instant award he continued to have complaints which were significantly disabling to him and rendered him unable to perform his work as a carpenter.

■ In analyzing the facts of this case we must bear in mind these well-known principles of law. The evidence must be considered in the light most favorable to the sustaining of the award. Donaldson v. Industrial Commission, 2 Ariz.App. 172, 407 P.2d 111 (1965). The question of disability and its causal relationship to the industrial injury is essentially within the realm of medical knowledge. Fyffe v. Industrial Commission, 10 Ariz.App. 377, 459 P.2d 104 (1969); Bedel v. Industrial Commission, 5 Ariz.App. 470, 428 P.2d 134 (1967). Where the medical testimony touching the problem of causation is impregnated with substantial uncertainty and is susceptible of an interpretation that the doctor is speaking more of possibilities than probabilities, the Commission cannot make a finding of fact based on such testimony. See Helmericks v. Airesearch Manufacturing Co. of Ariz., 88 Ariz. 413, 357 P.2d 152 (1960). It is the latter hereinabove mentioned principle which we believe to be the crucial one in this case. We say this because we are called upon to determine whether any change in the medical opinion of causation from an industrially related cause to some other cause was based upon reasonable medical certainty. We use the term "any change" because we are not sure the doctors are changing their original opinion which was based upon reasonable medical certainty. If medical evidence regarding causation is based on substantial uncertainty and is in the realm of possibilities rather than probabilities it should not be used by the Commission in determining causation as a fact. Helmericks.

Because of the importance attached to the last consultation report dated November 5, 1969, we set it forth, omitting only the physical examination and reference to X rays which are irrelevant to this discussion:

"Mr. Nunzio V. Micucci was examined today by Drs. T. H. Taber, Jr., Egon V. Johnson, James R. Moore, Joel Fisler and D. J. Potter.

"HISTORY: This patient was last seen in group consultation on 5–28–69, at which time the consultants felt that he should continue on light work but that he was not able to perform full carpentry duties, and it was suggested that a neuropsychiatric consultation might help the patient's overall rehabilitation and no specific medical treatment was indicated. It was felt that he could be closed in three or four months if no new or additional disability occurred.

"Since that time the patient has been under the care of D. J. Potter, M.D. and T. H. Taber, Jr., M.D. for supportive medical and orthopedic evaluation. A certain amount of functional overlay persisted. The patient was treated with Cortisone injections into his knee and various joints with symptomatic care and counseling and reassurance by his attending orthopedic surgeon. The patient eventually was able to find a light type of work and has been doing this for the past three months.

"On 10–14–69, Dr. Taber felt that the patient's condition was becoming essentially stationary with continued multitude of complaints, with no change in symptoms. He recommended a group consultation for any recommendations concerning further treatment or disability rating, if indicated.

"PRESENT COMPLAINTS: The patient states that he continues to have complaints referable to all areas of involvement, one of the main things that bothers him is pain in his feet and ankles. He has a hard time walking any distance. He has pain in both knees; both hips.

bother him, varying from side to side, at present the right hip is bothering him more. His back bothers him, he gets pain around to the front into the groin areas. His neck and shoulders bother him. At times he gets a little numbness in his fingers, but in general, his upper extremities do not give him much trouble.

"He states that he takes about 8 Aspirin a day, 2 at a time. He takes Darvon if his pain gets bad enough. He states that he has difficulty in working a full day and only works part time. He is presently employed over the last three months, doing mostly work at bench in painting and artistic type of work. He enjoys the work, but states that it certainly does not compensate him like he was used to with carpentering. He is a bit evasive about whether he is satisfied with the job or not, but states that he is certainly glad to be working and has noticed improvement in his mental outlook since he has been working.

"He states that he does not sleep well, getting up two or three, or four times a night and moving about. At times he has to take Darvon to sleep. He notes that he is easily fatigued and by the end of the day is generally quite sore and uncomfortable.

"PAST HISTORY: The patient has a proven diagnosis of Boeck's sarcoid established in Pittsburgh. He has no prior history of arthritis or bursitis. He has run a chronic hyperuricemia, controlled by appropriate medication, for a number of years. He had an old injury to his right knee when he was in the service which necessitated a surgical procedure. The knee has been more aggravated since his injury of April, 1967, and is associated with the persistence of his multiple joint complaints.

"COMMENTS: This patient continues to have myriad functional complaints with only very minimal abnormal objective findings at times. The consultants can see no indications for any further

medical examinations or treatments as re-related to the injury of 4–10–67.

"In our opinion this patient's case can now be closed without any permanent disability attributable to that injury.

"We recognize that the patient still continues to have symptoms which seem significantly disabling to him to perform his regular duties as a carpenter. We are in agreement with the fact that he will be limited in his ability to perform that type of work. We do, however, feel that he is able to be gainfully employed and that it is necessary for him to remain employed for his future ultimate general rehabilitation.

"It is our opinion that this patient may well have an early underlying degenerative joint disease which is causing the persistence of his symptoms and the continuation of the number of joint complaints that he has. This cannot, however, be proven clinically at this time, and this is not causally related to the injury of 4–10–67."

We have no difficulty with the burden that petitioner has to show that he is entitled to compensation under the Workmen's Compensation Act. Throughout the record we find evidence of injury and that the injury was industrially related. After petitioner's second accident, Claim No. BG 19669, a group consultation was held on May 28, 1968, wherein it was stated:

"It is the opinion of the consultants that the patient's present complaints are related primarily to the injury of 4–10–67 . . . The patient is on a light work status and we feel he is able to continue in this aspect. It is not likely that he will be able to perform all of the rigors of full carpentry duty . . ."

It is not disputed that petitioner's complaints started at the time of the industrial accident and had been related to the industrial accident. These same complaints continued up to the time of the November 5th consultation report where a change of opinion took place. To support this we need

only set forth an answer by Dr. Taber at the hearing of June 11, 1970:

"THE WITNESS: Yes, I think a number of his symptoms remained persistently the same throughout the entire course of the time that I saw him. His symptoms were initially caused by his injury of April '67. If they didn't change, I think it is reasonable to say the symptoms were probably causally related to the injury itself. . . ."

The history and complaints set out in the consultation report of November 5 also bear out these facts.

Since there has been affirmative medical testimony from the time of the industrial accident in April 1967 to the time of the November 5 consultation report that a causal relationship existed between the accident and petitioner's symptoms and ability to work including his functional overlay, the following question is presented: Is there in this record any medical evidence which is based upon reasonable medical certainty as required by law that it is probable that petitioner's present disability including his functional overlay is attributable to a cause other than the one previously stated by the doctors as related to the accident? Our answer to this question is in the negative.

The nature of the medical testimony upon which the conclusion to close petitioner's case without any physical or mental disability attributable to the injury was based is illustrated by the following excerpts from the hearing which seek to attribute the symptoms to some other cause. Dr. Taber testified:

"A. First of all, it was only our impression that this is probably what he has. . . . The main thing that makes this suspiciously likely as a diagnosis is that on his X rays of his dorsal spine —that's the spine between the shoulder blades—his X rays have begun to show the typical early changes of a degenerative joint disease.

\* \* \* \* \* \*

"A. It would be most likely, however, from a medical standpoint that somewhere on or before November 5, 1969, the patient's symptoms became really a manifestation of the underlying medical problems and not directly related to the injury.

\* \* \* \* \* \*

"A. Clinically, there never was anything to be absolutely sure on any positive joint. It is just an overall impression that he has an early arthritis."

Further, on this point we quote from the testimony of Dr. Englund:

"Q. On that particular date, did you find any evidence again of the three types of arthritis we talked of, rheumatoid, gouty arthritis or osteoarthritis— on February 19, 1968?

"A. No, there were no evidences here of arthritis disease at any particular time.

\* \* \* \* \* \*

"A. . . . His complaints also were not those of osteoarthritis. . . .

\* \* \* \* \* \*

"A. He was not an arthritic, no."

Pertinent also on this point is the following statement in the consultation report:

"It is our opinion that this patient *may* well have an early underlying degenerative joint disease which is causing the persistence of his symptoms and the continuation of the number of joint complaints that he has. This *cannot*, however, be *proven clinically* at this time, and this is not causally related to the injury of 4–10–67." (Emphasis supplied.)

All of the examples we have quoted and the other medical evidence to support some other cause not industrially related to petitioner's condition appear to us to be in the realm of conjecture and possibility, and fraught with uncertainty. We hold this evidence upon which the findings and award is based is unacceptable as coming within the principle announced in Helmericks. See also Gronowski v. Industrial

Commission, 81 Ariz. 363, 306 P.2d 285 (1957) and Cross v. Industrial Commission, 81 Ariz. 222, 303 P.2d 710 (1956).

We fully appreciate how difficult it is sometimes for a doctor to diagnose a condition, and also that most doctors by nature do not make dogmatic assertions unless called for by the circumstances, and therefore find no criticism of their giving the opinion they have as to medical causation. It is not, however, sufficient upon which to determine legal causation. In fact, the five doctors who signed the November 5 consultation report which stated the legal conclusion that the case could be closed without any permanent disability attributable to the injury also stated medically that petitioner continues to have myriad functional complaints and that they recognized that he continues to have symptoms which seem significantly disabling to him to perform his regular duties as a carpenter. They further stated that they were in agreement with the fact that petitioner would be limited in his ability to perform regular carpenter work. The legal conclusion of no disability and these other statements are obviously lacking in agreement.

The record shows that the industrial accident started and caused the complaints, and that the complaints and petitioner's present condition were related to the accident with reasonable medical certainty until the consultation report of November 5, 1969, and that all the evidence at the time and thereafter that his complaints or disability may be attributed to some other cause not industrially related was in the realm of speculation and possibility. At the most, it is obvious from the record that petitioner's condition was not stationary as to the causal relationship to the injury.

If the award cannot be sustained because there is no reasonable basis in the evidence upon which the Commission could have reached its conclusion, it must be set aside. In re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969).

Award set aside.

STEVENS, P. J., and CASE, J., concur.