495 P.2d 491

**Miles A. HOLBROOK, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Hulsey's Valley of the Sun Construction, Respondent Employer,**

**The Home Insurance Indemnity Company, Respondent Carrier.**

**No. I CA–IC 634.**

Court of Appeals of Arizona,
Division 1,
Department B.
April 6, 1972.

Langerman, Begam & Lewis by Jack Levine, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for The Industrial Comm. of Ariz.

Glen D. Webster, Jr., Phoenix, for respondent carrier and respondent employer.

EUBANK, Judge.

This matter is before us by our writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona holding that petitioner's claim was non-compensable in that he failed to prove he had sustained an injury by accident arising out of and in the course of his employment.

The question presented for review is whether there is sufficient evidence to support the award of the Commission. We hold that there is sufficient evidence and affirm the award.

■ Petitioner's main contention is that the hearing officer and the Commission ". . . could not reject Petitioner's testimony without some basis in the evidence . . . [and] the award can stand only if the record reveals evidence which impeaches the Petitioner's testimony or impugns his veracity. . . ." While there is no question that such evidence would be effective, the evidence does not have to rise to that height in order to create a conflict or affect the weight to be given the evidence. The rules for review of Industrial Commission awards are very well settled. Our Supreme Court in the case of In re Estate of Bedwell v. Industrial Commission, 104 Ariz. 443, 454 P.2d 985 (1969), said that it is the burden of the applicant to show affirmatively all the material elements necessary to sustain an award, and,

". . . The test in reviewing an award denying compensation is that it must appear that the evidence was such that, as a matter of law, the award of the commission cannot be sustained because there is no reasonable basis in the evidence upon which the commission could have reached its conclusion. . . ." (104 Ariz. at 444, 454 P.2d at 986).

Further, the court said that the weight which must be accorded the Commission's findings is that they be given the same consideration as those of a jury or a trial judge and in this process the Commission is the judge of the weight of the evidence and its conclusions based upon the weight of the evidence will not be disturbed on appeal. Finally, the Supreme Court stated that the reviewing court must always consider the evidence in a light most favorable to sustaining the award. *See,* Micucci v. Industrial Commission, 108 Ariz. 194, 494 P. 2d 1324 (filed March 23, 1972).

In International Metal Products, etc. v. Industrial Commission, 7 Ariz.App. 157, 436 P.2d 935 (1968), a case questioning whether an award could be based upon the testi-

-mony of an employee and members of her family, we held that it could and said:

"The Industrial Commission must evaluate all of the evidence. It may not disregard the evidence of interested witnesses. It may reject such testimony only when it appears that there are matters or circumstances which impair its accuracy. This may arise when the intrinsic character of the evidence or the extrinsic circumstances of the case cast suspicion upon the evidence." (7 Ariz. App. at 161, 436 P.2d at 939).

█ In the instant case we have both intrinsic and extrinsic evidence which casts doubt on the petitioner's testimony. He testified that he was injured on the job on November 17, 1969, but he did not report the incident to his foreman. The record further shows that on the evening of November 17 he called at the employer's home to advise him that he was terminating and to collect his wages so that he could drive to Las Vegas, Nevada, that same evening to seek more remunerative employment. He did not advise the employer that he had been injured on the job. He drove to Las Vegas, got drunk, and on the evening of November 18 got into a hassle with several deputy sheriffs and was arrested. He describes the event as follows:

"Q. While you were in Las Vegas, did you have any run-in with the police?

A. Yes.

Q. Can you tell us what occurred?

A. We got drunk and got put in jail.

Q. When did that occur?

A. That was the 18th.

Q. Was that on the evening of the 18th?

A. No, the morning.

Q. In the course of your getting drunk, as you put it, and getting put in jail, did you suffer any accident or any falls or any injury to your back during any of these events?

A. No.

Q. How long did you remain in jail?

A. About eight hours.

Q. Then what happened?

A. We got out and went and got us a room and looked for work; then came back.

Q. By the way, during the course of your arrest in Las Vegas, did you have a scuffle or fight with the police?

A. No.

Q. Did any of the police officers strike any blow to you or to your back in particular?

A. No."

Deputy Sheriff Thomas Moots testified that it took him and two additional deputy sheriffs from seven to ten minutes of struggle with the petitioner to subdue and handcuff him. He described the petitioner's efforts in the following manner:

"A Well, we were trying to grab him, he would bend over and he would try to throw us off, you know. He fell to the ground that he was twisting and kicking on the ground until we could finally pin his arms back and handcuff him."

He also testified that nothing about petitioner's condition indicated that he was disabled in any way. Deputy Sheriff Harry Shostick, who is himself five feet eleven inches and weighs 225 pounds, testified that the petitioner was a very strong individual and that the two of them wrestled with the petitioner for almost ten minutes before being joined by the third deputy sheriff and before subduing him. He said that in his six and one-half years' experience in law enforcement this was, ". . . one of my hardest arrests, as I remember, stands out as a classic." Deputy Ronald Marshal testified similarly and said that this was one of his three hardest arrests and that the petitioner did not appear to be suffering from any disability at that time.

The record shows that on November 22, 1969, the petitioner had returned to the Phoenix area and was in such pain in his lower back that he went to the emergency room at the Mesa Lutheran Hospital for treatment. The medical history taken at the time does not indicate any work-con-

nected injury but does state that the, "pain rt. cheek—buttocks—since Tues or Wed [was] getting worse . . . ." Tuesday was the 18th of November, the day of the arrest in Las Vegas.

The hearing officer found that the petitioner's testimony,

". . . relative to the alleged episode during his employment on November 17, 1969 while handling plywood, and his testimony relative to the subsequent events through the evening of November 18, 1969, was uncorroborated, and contradicted by disinterested witnesses, and is so intrinsically and extrinsically inconsistent as to reasonably cast substantial suspicion thereon. . . ."
. . ."

We agree and under these circumstances we must hold that the petitioner has failed in his burden to establish affirmatively that he sustained an industrial injury.

The award is affirmed.

HAIRE, C. J., and JACOBSON, J., concur.