**40**

495 P.2d 480

**STATE COMPENSATION FUND and Talley Industries, Inc., Petitioners,**

v.

**M. E. COOKE, Respondent Employee,**

**The Industrial Commission of Arizona, Respondent.**

No. 1 CA–IC 666.

Court of Appeals of Arizona, Division 1, Department A.

April 17, 1972.

Rehearing Denied May 17, 1972.

Review Denied July 11, 1972.

Robert K. Park, Chief Counsel State Compensation Fund, by Cecil A. Edwards, Jr., Phoenix, for petitioners.

Gibson & Gibson by Franklin K. Gibson, Phoenix, for respondent employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

DONOFRIO, Judge.

This case is before us by writ of certiorari to review the lawfulness of an award of The Industrial Commission of Arizona which found that respondent, M. E. Cooke, sustained an unscheduled disability as a result of an industrial accident which occurred on September 14, 1968.

The petitioners (State Compensation Fund and the employer), hereafter referred to as the Fund, had previously raised a procedural question but at oral argument waived same and the issue remaining is whether the award is reasonably supported by the evidence.

Respondent-claimant was an assembler of explosive devices for Talley Industries, Inc. and was injured at her job on September 14, 1968 when an igniter exploded as she was assembling a device by means of a press. She was temporarily knocked unconscious. On June 1, 1970 a Findings and Award for scheduled disability was entered by the Commission which found, among other things, that she had sustained a 25% binaural hearing loss as a result of the injury. Claimant filed a petition for hearing directed against the award. Hearings were had. Thereafter the Commission entered its award finding, among other things, that claimant had sustained an unscheduled disability. The Fund filed a timely Petition for Hearing, alleging the claimant did not suffer an unscheduled disability. After the award was entered finding an unscheduled disability, this review followed.

The question in this case hinges around whether the claimant has carried her burden of showing that she suffers from dizziness which is attributable to the industrial accident. The hearing officer who made the recommendations upon which the

award is based gave as reasons for his recommendations the following:

"Applicant has complained of dizziness from the time of her injury. The deafness in both ears has been recognized by all doctors who have examined her. The electronystagonogram relied upon by Dr. Wertz and Dr. Elpern was by Dr. Elpern's explanation 'not interpretable'. Dr. [Douglas W.] Frerichs, who also is an ear specialist received the same test and ordered an additional electronystagnogram. This gave positive objective evidence of a visual disturbance compatible with applicant's complaints, both of dizziness and double vision. It is this referee's belief that as a result of the accident applicant has sustained deafness and a disturbance in her balance (dizziness) and a visual defect, thus causing an unscheduled disability."

■ The record shows that claimant complained of dizziness from the time of her injury. Doctors Max L. Wertz and William B. Helme had testified that they were unable to find any objective signs of dizziness. The Fund takes the position that Dr. Douglas W. Frerichs' testimony, because of its uncertain nature, does not create a conflict in medical testimony and is not sufficient to support the award. Of course, where medical evidence is impregnated with substantial uncertainty and is susceptible of an interpretation that the doctor is speaking more of possibilities than probabilities, the Commission cannot make a finding of fact based upon such testimony. Helmericks v. Airesearch Manufacturing Co. of Ariz., 88 Ariz. 413, 357 P.2d 152 (1960).

We have carefully read the record in light of the pronouncements in Helmericks and in the recent Supreme Court case of Micucci v. The Industrial Commission, 108 Ariz. 194, 494 P.2d 1324 (filed March 23, 1972), and find there is a conflict in the medical evidence and that there is a reasonable basis in the evidence from which the Commission could have reached its conclusion.

■ Dr. Frerichs' testimony, when read in its entirety, leaves no question but that his opinion was based upon reasonable medical certainty. It was to the effect that claimant suffers from dizziness which is attributable to the industrial accident.

Claimant was seen by Dr. Frerichs on four different days in July 1970, during which time she was given tests, examinations, and was studied closely. From the beginning, his testimony appears to be clear on the subject, particularly on the question of dizziness. He testified as follows:

"A I first saw Mrs. Cooke as a patient in my office on the ninth of July, 1970.

"Q What observations did you make at that time?

"A My observations were that the patient had a moderately severe nerve-type deafness. She had some instability of gait and function in walking at this time. An electronystagmographic that we perform revealed that the patient had some evidence of dizziness when lying on her left side. This is objective; these are the things I found wrong."

The doctor further testified on the subject of dizziness, giving an explanation of claimant's statements regarding "seeing double":

"A  .   .   .   .   .   .   .   .

"But on the electronystagmographic test we showed definite evidence when the patient was placed on her left side that there were some changes. This is a more sensitive test. This picked up some changes that we are not able to always see grossly. That's why we do it with a machine, and also it gives you a record of it so you know you didn't make a mistake and think you saw their eyes twitching and they weren't.

"Q Then a complaint of double vision often goes along with this balance?'

42

"A Yes. Usually this balance center wouldn't give you a true double vision. Quite often we have a lot of patients with dizziness and they say, 'I have hazy vision,' or, 'It seems like it is double vision.'

"She did say at one time double vision. I would really say that usually the balance center doesn't give you double vision, but it can give you visual disturbances."

As to causation, Dr. Frerichs testified that the loss of hearing in relation to the explosion and the dizziness in relation to the explosion go together.

The Fund relies heavily on the definiteness of the testimony of Doctors Wertz and Helme. In this connection it should be noted that although Dr. Wertz was unable to find any objective signs of dizziness, he testified:

"MR. GIBSON:

"Q Well, if you knew that she did not have dizziness before the explosion and she did afterwards, would that be sufficient basis that would lead you to have an opinion on a reasonable degree of medical certainty that the explosion must be the cause?

"A Well, I want to point out that we did rather extensive tests to find out if the dizziness was due to the damage to the inner ear, and as I stated there are so many causes for dizziness, and based on those qualifications one might assume that it could be caused by an explosion."

Dr. Helme in his examination could not find that claimant was suffering from any dizziness, but he also testified that he was unable to say with absolute certainty that claimant didn't have symptoms of dizziness at other times.

We find the award is reasonably supported by the evidence.

Affirmed.

STEVENS, P. J., and CASE, J., concur.