509 P.2d 631

Thelma I. HAYNES, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Maricopa County General Hospital,
Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. 1 CA–IC 728.

Court of Appeals of Arizona,
Division 1,
Department B.

May 3, 1973.

Rehearing Denied May 23, 1973.

Review Denied July 3, 1973.

Meadow, Cheche, Nastro & Thrasher by
Robert Y. Thrasher, Phoenix, for petition-
er.

William C. Wahl, Jr., Chief Counsel The
Industrial Commission of Arizona, Phoe-
nix, Robert K. Park, Chief Counsel State
Compensation Fund and James E. Mc-
Dougall, Phoenix, for respondents employ-
er and carrier.

EUBANK, Presiding Judge.

The sole issue in this review by certiora-
ri of an Award of The Industrial Commis-
sion is whether there was a reasonable ba-
sis in the evidence to support the Commis-
sion's finding that petitioner sustained no
reduction in earning capacity due to her
industrially related permanent partial dis-
ability.

The facts are as follows. On December
13, 1969, while employed as a nurse's aide

at Maricopa County Hospital, petitioner was shaking down a thermometer when she felt a sharp pain in her neck and right shoulder. She was hospitalized and the injury was subsequently diagnosed as a cervical disk syndrome with nerve root involvement. She was released to work in May, 1970, but was unable to work steadily and eventually terminated her employment with the County Hospital on July 4, 1970. Her orthopedic condition was found to be stationary on September 25, 1970. In January, 1971, the Commission entered an Award finding that petitioner had sustained a 5% general physical functional disability and that no reduction in earning capacity resulted therefrom. A hearing was timely requested and in June, 1971, an Amended Decision upon Hearing and Findings and Award issued from the Commission finding, *inter alia*:

"11. But for the non-industrial cardiovascular condition, the applicant would be able to continue in her regular occupation on a full-time basis without reduction in monthly earning capacity."

The law with regard to the review of Commission awards is that the petitioner must affirmatively show that she is entitled to compensation; that the evidence adduced at the hearing must be considered in a light most favorable to sustaining the award; that conflicts in the evidence or inferences drawn therefrom, resolved or drawn by the Commission, must not be disturbed unless wholly unreasonable; and finally, that the award is not to be set aside unless there is no reasonable basis in the evidence to support it. Corr v. Industrial Commission, 16 Ariz.App. 12, 490 P.2d 841 (1971).

Petitioner admits that her cardiovascular condition, diagnosed as coronary artery disease, preexisted the industrial accident, but she maintains that the pain caused by that injury aggravates or triggers her angina pectoris (chest pain) and that this aggravated chest pain was the ultimate cause of her inability to work.

Dr. Jerome Robinson, the cardiologist who had ordered petitioner off work completely after June, 1970, testified at the hearing that petitioner was having more chest pain after the industrial accident than before; that the continued pain from the cervical injury had lowered her threshold of heart pain; and that the neck and arm pain was a "contributing element in her disability". The doctor indicated, however, that the neck pain did not cause a more severe underlying heart disease and that he was aware of no specific incident of cervical pain actually precipitating an anginal attack, but rather that such an aggravation was something "that might happen in the future." On cross-examination Dr. Robinson stated:

"A She may have angina spontaneously, you know. I can't say when that is going to happen. That may occur. The neck condition may be a turning factor, even in the future. If she is doing something to aggravate that, it might trigger off the other. I can't say.

\* \* \* \* \* \*

"Q . . . But does that really say that merely because she has been off work and has had less angina, isn't it true, Doctor, that she has been doing less strenuous activity, which were always the precipitating factors before, weren't they?

"A How do you separate these two out? I am not sure in my own mind. It is not a clearcut situation where only one's environment be changed. Two problems are aggravated by physical activity, the neck problem and her heart. And the neck might precipitate the heart trouble, too."

The doctor also testified:

"She was having cervical disk pain from lifting as well as getting anginal chest pain from it. And if she got pain in the neck and arm from her cervical disk, it may precipitate an anginal attack, which may not have occurred oth-

erwise. In all honesty, I don't know. It is hard to separate the two."

Dr. Robinson testified at one time that, assuming there had been no intervening industrial injury, petitioner's heart condition would have deteriorated to the point where he would have taken her off a regular work status by June, 1970, for the heart condition alone. He later stated that such a conclusion would be mere "speculation" on his part.

Dr. Herschel Richter, a cardiologist and internist, indicated that he could probably not agree that petitioner's anginal chest pains could be triggered by her cervical neck pain unless there was an occasion on which this had actually occurred.

Petitioner testified that the situs of her chest pains changed and their frequency increased following the industrial accident, and related that to the strenuous activity of her job which would often initiate the chest pain. Petitioner did not, however, indicate any occasion on which neck or arm pain had in fact immediately preceded or precipitated the chest pain.

Dr. Frank DePaoli, petitioner's treating physician and an orthopedic surgeon, testified that she had extensive preexisting osteoarthritis which could well have been the cause of her subsequent neck pain; that at his last examination he found no evidence of nerve root impingement; that it was only a possibility that her industrial accident aggravated the osteoarthritic condition; and that he was fully aware of petitioner's heart condition but she had never related to him any incident when the discomfort related to her neck had precipitated an anginal attack although he had seen her on 28 occasions. In regard to the possibility that petitioner's cervical disk pain was aggravating her chest pain Dr. DePaoli stated:

"Let me make this clear. If somebody has a disk and they make a complete recovery from it and they have a lot of pre-existing osteoarthritis which might be causing them trouble, you cannot blame an industrial injury of a rather

trivial nature such as shaking down thermometers to be causing all of her future neck difficulties, because she had a pre-existing condition which will probably cause symptoms in the future. . . . But to specifically say that this cervical disk syndrome that she had is aggravating and causing the difficulty in preventing her from work, I cannot agree with it."

Petitioner maintains that Dr. DePaoli was not qualified to testify to the relationship between the industrial injury and the cardiac disability because he was an orthopedist, and that Dr. Robinson's testimony was, therefore, the only competent evidence as to that relationship. We disagree. Clearly the field of specialization of a competent medical witness affects the weight to be accorded his evidence, not its admissibility, and the Commission is the judge of the weight of the evidence. Holley v. Industrial Commission, 15 Ariz.App. 587, 490 P.2d 32 (1971).

Further, we find that Dr. Robinson's testimony when viewed as a whole is impregnated with substantial uncertainty, is equivocal in nature, and speaks more in terms of the possibility of future aggravation than the reasonable medical probability of a present causal relationship. Under these circumstances, Dr. Robinson's testimony did not present substantial evidence on which the Commission could have based a finding of causality. Helmericks v. Airesearch Mfg. Co. of Ariz., 88 Ariz. 413, 357 P.2d 152 (1960); Benavides v. Industrial Commission, 19 Ariz.App. 467, 508 P.2d 354 (filed April 3, 1973); State Compensation Fund v. Cooke, 17 Ariz.App. 40, 495 P.2d 480 (1972).

Petitioner's position in this case is substantially similar to that of the claimant in Montgomery Ward Co. v. Industrial Commission, 14 Ariz.App. 21, 480 P.2d 358 (1971) wherein we stated:

"The principle is well established that a preexisting disease or infirmity of an employee does not disqualify that employee from compensation where an in-

dustrial injury, operating on that preexisting disease or infirmity, produces further disability . . . . (citations omitted) However, the claimant has the burden of showing that the claimed additional disability was in fact caused or contributed to by the work-related injury and not merely a result of the natural progression of the preexisting disease. . . . " (14 Ariz.App. at 22–23, 480 P.2d at 359–360).

When the results of the accident are not readily apparent to the layman, the causal connection must be established by expert medical testimony and where, as in the case *sub judice*, there are two or more possible causes for the disability and the medical testimony introduced to establish the causal chain is couched only in terms of possibilities, the claimant has not met her burden of proof. Employers Mutual Liability Ins. Co. v. Industrial Commission, 17 Ariz.App. 516, 498 P.2d 590 (1972). We hold that the record provides a reasonable basis to support the Commission's findings.

Award affirmed.

JACOBSON, C. J., and HAIRE, J., concur.