477 P.2d 282

**Ada LAMB, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Cudahy Packing Company, Respondent Employer,**

**Cudahy Packing Company, Respondent Carrier.**

**No. 1 CA–IC 279.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 1, 1970.

Rehearing Denied Dec. 29, 1970.

Gorey & Ely by Stephen S. Gorey and Sherman R. Bendalin, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, The Industrial Commission of Arizona.

Fennemore, Craig, von Ammon & Udall by Michael Preston Green and Philip A. Edlund, Phoenix, for respondents.

CAMERON, Judge.

This case is a writ of certiorari to test the lawfulness of an award and finding of the Industrial Commission issued 5 March 1969, denying a rehearing and affirming an award of the Commission which found that the petitioner failed to sustain her burden of establishing a causal connection between work-related injuries to her back in 1957 and 1959 and a herniated disc which was surgically corrected several years later, and denying reopening of her claim.[1]

The question presented is whether this award of the Commission was reasonably supported by the evidence.

The facts necessary for a determination of this matter are as follows. The petitioner suffered three injuries while working for the same employer, respondent herein. On two consecutive days, 22 January and 23 January 1957, the petitioner was hit in the back with hams thrown by a co-employee. On 29 July 1959, the petitioner was reaching behind her to pick up a ham to wrap, when her foot slipped in water and she sustained a wrenching, twisting injury to her back. The petitioner urges that this latter injury was the cause of ruptured discs for which she was operated on 10 September 1965, the operation resulting in a two-level laminectomy and excision of the offending discs.

The petitioner has the burden of presenting sufficient evidence to support a claim for reopening. A.R.S. § 23–1061, Subsection C, Harding v. Industrial Commission, 11 Ariz.App. 426, 464 P.2d 1013 (1970). Where the result of an accident for which workmen's compensation is claimed is of such a nature that it is not clearly apparent to an ordinary layman, this must be established by expert medical testimony. Romero v. Industrial Commission, 11 Ariz.App. 5, 461 P.2d 181 (1969).

At the hearing held at the request of the petitioner, three doctors testified concerning the causal connection between the industrial injury and petitioner's then present condition which prevented her from holding gainful employment. Philip F. Hartman, D.O., testified that he had been treating the petitioner for approximately 15 years. Dr. Hartman testified that the petitioner's back symptoms continued from 1959 through 10 September 1965, the date of the laminectomy operation. He testified that he had continued to treat her through 1960, 1961, 1962, 1963, and 1964 at regular intervals. In 1965, Buford Gregory, D.O., an orthopedic surgeon, was called in consultation. Dr. Gregory performed the operation, assisted by Dr. Hartman.

With regard to causation, Dr. Hartman testified as follows:

"A  I would say that if that accident or that wrench that she had attained is her only history as to her injury, that could possibly be the cause of her disc problem.

"Q  Again, Doctor, realizing that lawyers have to speak in somewhat different

---

1. This case was decided under the law as it existed prior to 1 January 1969.

terms, can you tell us with what degree of certainty you are expressing this opinion, with reasonable medical certainty, with reasonable probability, as a possibility, or impossibility?

&ast; &ast; &ast; &ast; &ast; &ast;

"A   I would say within a reasonable degree of certainty that accident was the cause of her disc problem."

Later, on cross-examination, Dr. Hartman was asked:

"Q   &ast; &ast; &ast; [I]s it possible to relate the cause of the herniated disc to any specific incident or can we only guess and speculate about the cause?

"A   Yes, I think you would speculate. It would be speculation as to the cause."

Dr. Gregory was asked and answered on cross-examination concerning the accident itself:

"A   Oh, I couldn't argue this with you. I am not even—I would be foolish to try to tell you that the herniation occurred at the time of the accident, but I do believe that it was the precursor, the original situation, which started her on the road to the eventual herniation.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q   Why do you say that, just because you have no history of any other untoward event?

"A   That is correct.

"Q   In the absence of anything else, in other words?

"A   That is correct.

"Q   But even then at best, what could you say, that it possibly was the cause or it certainly was or—

"A   Well, it most probably was. It is the only incident that I am aware of that I feel could have caused the eventuality that did come about."

Ronald S. Haines, M.D., testified that he had seen the petitioner on 4 August 1959, a few days after her 29 July 1959 accident. He testified that he admitted her to the hospital after conservative treatment failed on 7 August 1959, where she stayed until 25 August 1959. During that time Dr. Haines was on vacation and in his place she was seen by Dr. Colton. Also Dr. Eisenbeiss and Dr. Williams were called on consultation during this period of time. Dr. Haines had last seen the petitioner at the consultation board of 25 July 1960. His testimony was that it was possible that the accident could have caused the disc situation which was discovered by surgery six years later. Dr. Haines was asked as part of a hypothetical question as follows:

"Q   &ast; &ast; &ast; [C]an you tell us, yes or no, whether you would be able to form an opinion as to whether there was a probability or possibility or certainty from a medical viewpoint that this herniated disc discovered in the L4–L5 area on September 10, 1965, was causally related to the injury which has (sic) originally has been described and which you have described to us here; would you be able to give an opinion, Doctor?

"A   I could give a partial opinion. Of course, it would be possible that she might have injured herself one date and had recurrent symptoms later.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q   We wanted you to go as far as you can say. Would you say impossible, possible—

"A   Possible."

The referee's report which was submitted to the Commission indicated that he felt the medical testimony of Dr. Gregory was not strong enough to warrant a determination of causal relationship in view of the testimony of Dr. Hartman and Dr. Haines, both of whom at one time or another had used the words "possible relationship," although Dr. Hartman at one point on direct examination stated that there was causation "with reasonable medical certainty."

Larson, in Larson's Workmen's Compensation Law, has criticized the tendency

to rely too heavily upon the possible-probable distinction in determining the question of medical-legal causation in workmen's compensation cases:

"§ 80.32. Interpreting cautious medical testimony

"The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as 'might', 'could', 'likely', 'possible' and 'may have', coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant's head might have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted, because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation."

 We agree that the medical evidence should be read as a whole and considered as a whole. Our Supreme Court has made it clear, however, that when the evidence is such that the causation tends more to the possible rather than the probable then the workman has not sustained the burden of proving the case:

" * * * Where, as here, the only expert testimony touching the problem of causation is 'impregnated with substantial uncertainty' and ' * * * as a whole it is susceptible of an interpretation that the doctor is speaking more of possibilities than probabilities,' this Court has stated it ' * * * cannot require

the commission to find a fact on possibilities.' Gronowski v. Industrial Commission, 81 Ariz. 363, 366, 306 P.2d 285, 287; Cross v. Industrial Commission, 81 Ariz. 222, 225–226, 303 P.2d 710, 712–713." Helmericks v. Airesearch Mfg. Co., 88 Ariz. 413, 416, 357 P.2d 152, 154 (1960).

Award affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.