503 P.2d 387

Billie L. BROADUS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Pinal County General Hospital, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 673.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 28, 1972.

As Corrected Nov. 29, 1972.

Rehearing Denied Dec. 29, 1972.

Review Denied Jan. 23, 1973.

William B. Revis and Lindauer & Goldberg, P.A., by Mark H. Goldberg, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund, by R. Kent Klein, Phoenix, for respondent Carrier and respondent Employer.

STEVENS, Presiding Judge.

Billie L. Broadus, the petitioner herein, had been employed by the respondent employer for approximately two years when on 13 December 1965 she sustained a compensable back injury. At that time, she was 43 years of age, a person of limited education, a person without special skills or training, married and the mother of three children. At the hearing held in 1971, she testified that the youngest child who had been working left home approximately a month before the hearing. At the time of her injury, her average monthly wage was $262.45. She employed counsel for the first time following the Commission's action of 6 May 1971, the action before this Court for review.

Historically, it is well to outline certain statutory and Commission rule changes. The claim of the petitioner was seasonably filed and assigned Claim No. BD 51434. In 1968, the Commission's compensation law was extensively amended effective on 1 January 1969 as to new accidents which occurred after that date and as to petitions to reopen filed after that date. All references in this opinion to the Arizona Revised Statutes will be to the statutory sections effective on or after 1 January 1969. There were Commission rules in effect prior to the statutory changes. These will be referred to as "the old rules". They remained in effect until the new rules were adopted. Rule 1 of the new rules states:

> "These rules shall become effective on September 1, 1970 and shall apply to all hearings held after October 1, 1970."

The petition to reopen which led up to the matter now before the Court was filed after 1 January 1969 and prior to 1 September 1970 and although it related to the 1965 injury it was numbered under the new claim numbering system and now bears Claim No. 0/9 80–55.

Surgery which was causally related to the injury was performed on 22 December 1965 by W. S. Hunter, M.D., an orthopedic surgeon. His report of the operation contains the following: "Complete Name of Surgery: Interlaminal laminectomy L 4–5; L 5–S1, Disc excision L 4–5".

Dr. Hunter's report of 22 August 1966 expressed the opinion that the petitioner's condition was reaching a stationary point; that in the near future she could be discharged from Commission care with a 10% permanent general physical disability and that she was unable to return to any form of heavy work. He expressed a further

opinion that she could do her own housework and that she could perform a full day's light work, work requiring the lifting of less than 25 pounds. The petitioner's husband, who was an operating engineer, was then working in Nevada. The petitioner was anxious to join him.

The Commission entered its first award in this matter on 6 September 1966 in which it established her average monthly wage, recited that she was employable on 30 August 1966, provided for a continuation of medical benefits until her condition became stationary, directed that she look for work and granted temporary partial compensation.

The file reflects that the petitioner's attending physician, W. J. Clemans, M.D., was continuing to administer medication as late as 26 September 1966. Dr. Clemans concurred in Dr. Hunter's evaluation of a 10% permanent general physical disability. Prior to the last date mentioned, the petitioner's husband secured work in California and, understandably, the petitioner was anxious to join him there. On 5 October of that year the Commission granted the petitioner's request for permission to go to California and to receive medical attention in California at the expense of the carrier. This Court appreciates the difficulties borne by all parties as a result of the petitioner's subsequent departure from the State and numerous changes of domicile. Reports were received from a doctor in California. The petitioner's husband reported her inability to work. Shortly after the petitioner moved to California, J. Howard Varney, M.D., an orthopedic surgeon, reported a diagnosis of an early osteoporosis of the skeleton. Dr. Varney reported that the petitioner was physically capable of some work and his 23 November 1966 report is, in part, as follows:

"Pain, when present, is in the low back and left hip but when she takes it easy this is not much of a factor. On the California rating system I would say she has minimal about 50% and slight about 50% of the time. She has been unable to do light work since last August, for her family, etc.

Her condition is permanent and stationery [sic], I believe, and settlement of permanent disability rating could be made on the above basis."

On 2 February 1967, Mr. Ross Lamoreaux, counselor in the Commission's Rehabilitation Department, wrote to the petitioner in California suggesting that she contact the Division of Vocational Rehabilitation in Bakersfield. The file is silent as to any follow-up in connection with the suggestion.

There is an office memorandum dated 21 February 1967 stating that petitioner and her husband had visited the Commission office; that Mr. Broadus had been unable to find work and that they were going to his native Oklahoma. Shortly thereafter, there was a communication from the family of the petitioner from Black Canyon City, Arizona. Although the file is a bit confusing, we gather that Mr. Broadus had secured Arizona employment, and that the petitioner had returned to Arizona. The Commission entered a second award dated 11 April 1967 finding that the petitioner's condition had become stationary on 11 February 1967 and terminating her accident benefits together with her temporary disability benefits as of that day. By the award, the Commission reserved jurisdiction to make a later determination of her loss of earning capacity.

On 3 May 1967, the petitioner appeared at the Commission office and on a Commission form executed a petition and application for readjustment or reopening of claim. We quote the stated basis of her petition:

"I am in need for [sic] medical care and Dr. Meredith will submit possible advanced permanent payments."

A memorandum in the Commission filed on the same day recites:

"Claimant came in to ask about what comes next. She is still having spasms in her leg, especially at night. Dr. Mer-

redith [sic] is treating her and since it appears that she needs to reopen her claim, (it became final at mid-night yesterday) She submitted a petition to reopen and would like to have the consideration of Advanced permanent payments. Or a hearing or?"

In June the Commission wrote to the petitioner requesting a copy of the doctor's report and the petitioner replied from Oklahoma stating that her husband had gone to Illinois to work. She stated that she had been without employment and was forced to live with her sister. She reported that she was working for her sister part time in a job which required no lifting and permitted her to be seated when it was necessary. She reported that she was receiving medical care. In response to a communication from the Commission, the sister wrote as follows:

> "Wilburton, Oklahoma
> August 1, 1967
>
> To whom it may concern:
>
> Mrs. Billie L. Broadus started work in my cafe on June 12, 1967. She works 5½ hours per day and a total of 33 hours per week. Her rate of pay is 65¢ per hour. Her duties is [sic] to make the salads and wrap silverware. Mrs. Broadus has earned $128.72 through July 26, 1967, working here in my cafe.
>
> Yours truly,
> /s/ Lena DeHart
> Lena E. DeHart, Owner
> Lena's Cafe
> 111 West Main Street
> Wilburton, Oklahoma 74578."

Upon receipt of the sister's letter the Commission entered an award on 23 August 1967 finding that the petitioner "is employable on the open labor market in the same locality in which she resides", and determining that the petitioner had sustained a 57.07% loss of earning capacity entitling her to an award of $82.38 per month. The Commission retained jurisdiction to amend the award on a showing of changed conditions as outlined in the case of Adkins v. Industrial Commission of Arizona, 95 Ariz. 239, 389 P.2d 118 (1964). From matters which appear later in the file, at the time not known to the Commission, the petitioner's employment by her sister appears not to have been an open market employment but more a sympathetic employment which we find in Houser v. Industrial Commission, 15 Ariz.App. 504, 489 P.2d 878 (1971). The petition of 12 January 1970 indicates that the above-mentioned employment terminated on 2 August 1967.

As became evident at a later date, on 2 September 1969 the petitioner fell and injured her left ankle, requiring surgery. The record treats this accident as non-industrial and is silent as to the presence of any causal relationship between the petitioner's 1965 industrial injury and the fall which caused the ankle injury. During the time that she was working for her sister, the petitioner had symptoms that were later diagnosed as an ulcer.

On 12 January 1970, she filed a petition to reopen from which we quote:

> " * * * Need medical help and support, in fact have been in need since the beginning of injury. Dr. Daniel T. Meredith, M.D. 2536–N.–3rd St. Phoenix, Arizona gave me a thorough examination during the first ten days of Jan–1970. I have constant pain and troubles with back and leg since the operation Dec. 13–1965. Also have a report from Dr. James O. Royder, Box 463—122 Franklin—Hutchins, Texas 75141— (over) * * *
>
> The following named doctors have attended me: Dr. Howard G. Lieberman M.D. 13070 Highland Springs Rd.—Suite 11, Beaumont, Ca. 92223.
>
> 2. I have worked for the following employers since my case was closed: Last work was for my sister at her Cafe at Wilburton, Okla, August 2–1967.
>
> /s/ Billie L. Broadus"

The copy in the file does not carry forward the portion in the petition indicated

by "(over)". The petition was accompanied by a November 1967 report from James O. Royder, D.O., of Hutchins, Texas, who reported in part:

"The patient has attempted to go back to work but has found the pain and discomfort in her left leg will not permit her to work."

Rule 64 of the old rules of the Commission, then in effect, required in part that petitions to reopen be "supported by a written report of a physician or surgeon, duly and regularly licensed to practice medicine and surgery in the State of Arizona." The petition was not accompanied by a report from an Arizona physician and when referred to the carrier, the carrier issued its notice of claims status on 19 February denying the petition to reopen and stating as the reason:

"No medical report received to support petition."

We hold that this is not an adjudication on the merits and is without prejudice to a later consideration of Dr. Meredith's report.

Old Commission Rule No. 8 provided that proper forms would be supplied by the Commission and that such forms should be used. On 17 July 1970, the petitioner filed a new petition, being the petition which leads up to the matter now before this Court. A Commission form was used and it recites:

"I keep having terrible burning pain in hip. Left leg is smaller and bothers me very much."

Petition also recited the September 1969 ankle surgery.

On 20 July, a report by Daniel T. Meredith, M.D., and a report of an EMG examination were filed. The doctor's report was silent as to the ankle injury. The doctor's report related the 5 January 1970 examination and we quote from the report in part:

"On examination this patient does appear acutely ill and in pain. She has a very definite limp favoring the left lower extremity. There is swelling of the left knee with tenderness and a 1+ edema of the left leg. Nerve changes were compatible with L5 and S1 nerve root on the left. There was muscle spasm and tenderness of the low back muscles with point tenderness over L4, 5 and S1 interspace. Reflexes were decreased on the left as compared to the right.

X-rays of the lumbar vertebrae revealed narrowing of L4 and 5 L5 S1 interspace. An EMG was done, copy of which is enclosed, which is abnormal with irritation of L5 S1 nerve roots. This patient does have pathology and a myelogram is indicated.

Diagnosis was that of L5 S1 nerve root involvement both from the objective viewpoint and with E.M.G., severe lumbosacral sprain, bursitis of the left knee, all dating back to the injury of December 1965."

The EMG report by Freeman P. Fountain, M.D. concludes as follows:

"Abnormal EMG with irritation of L5–S1 nerve roots on the left side."

The Fund issued its notice of claims status denying the reopening by reason of "insufficient medical evidence to establish new, additional, or previously undiscovered disability causally related to the claim petitioned to be reopened."

After an exchange of correspondence between the petitioner and the Commission whereby she sought advice, she filed a timely request for a hearing. This discloses not only physical and medical problems, but also a reduction, if not an absence, of earning capacity as compared with the August 1967 award.

On 16 November 1970, the hearing officer scheduled a hearing for 2 February 1971. On 16 December 1970, the Fund wrote to the Commission, with a copy to the petitioner, forwarding certain reports. The letter advised that should the petition-

er desire to question the authors of the reports she should request subpoenas, which she did not do, and at the hearing she expressly consented to the consideration of the file by the hearing officer.

The reports so forwarded by the Fund include an office memorandum of 30 July noting that Dr. Meredith's secretary reported that Dr. Meredith stated that he had examined the petitioner on 17 July 1970 and found no change in relation to his 5 January examination. There was also a report as of 17 March 1970 from James Lytton-Smith, M.D., a practitioner in orthopedics, addressed to the Fund which contained his findings as to his examination of the petitioner on that day. Dr. Lytton-Smith's report expressly recited the September 1969 ankle injury and concluded that while the petitioner needed no further medical care for her back, it was his opinion "that as a result of the accident of 12–17–65, she has approximately a 15% general physical disability." We can only conjecture that the Fund secured this examination and report following its February 1970 notice of claims status in anticipation that the petitioner might request a hearing. After the receipt of Dr. Lytton-Smith's report, the Fund secured a review thereof by James R. Moore, M.D., who did not personally examine her. Dr. Moore's summary of the Dr. Lytton-Smith report is as follows:

"From a review of Dr. Lytton-Smith's report of 3–17–70, it would appear that any additional disability which this patient may have over and above that when her case was closed with an award of 10% general physical impairment is due to an injury to the left ankle sustained in 1969 according to statement made.

It is possible that Dr. Lytton-Smith's estimate of 15% disability as compared with a previous 10% would be accounted for on the basis of the latest nonindustrial injury to the left ankle."

This Court is unable to read the clear wording of Dr. Lytton-Smith's report in the manner in which it was by Dr. Moore.

What were the issues before the hearing officer?

■ The Fund urges that the 17 July 1970 petition relates only to a new, additional, or previously undiscovered disability or condition. The Commission urges that the Commission and not the carrier has the responsibility for determining earning capacity and the loss thereof. A reading of A.R.S. §§ 23–1044, subsec. F; 23–1047, subsec. B; and 23–1061, subsecs. F and H would seem to bear out this division of duties. The Commission points out that its new Rules 33 and 34, which were not in effect at the time of the filing of the petition herein questioned, makes a distinction between new, additional, or previously undiscovered conditions and a request for a charge in compensation.

The Commission urges that even should the petition include the issue of earning capacity, the division of duties between the carrier and the Commission require that the carrier first determine the medical question and that if the medical question is resolved against the petitioning workman, there is no need to resolve the loss of earnings question. The Commission urges that any inquiry at the hearing on the medical question which leans toward the earnings question is merely a discovery procedure for the benefit of the Commission. The Commission concedes that there may be simultaneously presented petitions raising the issues of a change in physical condition and a change in earning capacity.

■ So far as the record indicates, the petitioner called upon the claims department of the Commission and was there assisted in preparing the July 1970 petition. When Commission personnel undertake to assist an injured workman in such a vital step in the adjudication of the workman's rights, the resulting petition must be liberally construed in favor of the injured workman.

We hold that under Adkins, supra, and the current statutes, injured workmen can simultaneously request an amendment of an award based upon all of the grounds set forth in Adkins and that the petitioner is permitted to prevail upon any one or all of the grounds urged. In this instance, it was unreasonable to require two hearings.

The hearing officer concluded that the file did not support a finding that the petitioner had sustained her burden of proof in relation to new, additional, or previously undiscovered disability. In commenting on Dr. Moore's analysis of Dr. Lytton-Smith's report, the hearing officer stated:

"A brief report of April 10, 1970, by Dr. James R. Moore, concludes that Dr. Lytton-Smith's opinion about increasing the general disability rating to 15 percent, from the 10 percent originally found in August, 1967, could be accounted for on the basis of the residuals from the non-industrial, left ankle fracture of September, 1969."

We earlier stated that we hold that Dr. Moore's conclusion was not well founded and we hold that the hearing officer's enlargement thereof adversely to the petitioner cannot stand.

We have the uncontradicted report of Dr. Lytton-Smith that petitioner's disability rating should be 15% and not the prior 10%, as well as his statement that there was a causal relation to the accident in question. We have Dr. Meredith's report noting a nerve root involvement at the situs of the surgery. We have Dr. Royder's report that in late 1967 her pain and discomfort would not permit her to work. The medical evidence is documentary only. We can weigh this evidence as well as could the hearing officer. We are not here faced with the hearing officer's evaluation of live but conflicting medical evidence.

On review by the Commission, two Commissioners without comment voted to affirm; two Commissioners voted to reverse on the basis that the file discloses new and previously undiscovered medical problems; and one Commissioner voted to affirm believing that the file showed a conflict in medical testimony which had been resolved by the hearing officer.

By our holding, we only establish that the record, as it was presented, required a reopening at least on an investigative basis as to the issue of new, additional, or previously undiscovered disability. We express no opinion as to the possible cause or effect of the ankle injury or the ulcers. Johnson v. Industrial Commission of Arizona, 107 Ariz. 338, 487 P.2d 759 (1971), recognizes that the granting of a petition to reopen on an investigative basis, which in our opinion is called for in this situation, does not preclude the Commission from later determining the absence of a new, additional or previously undiscovered condition.

It is our opinion that the hearing to be held should consider both the issues as to change in physical condition and the possibility of increase in compensation. Under these circumstances, we refrain from commenting on the opinion expressed by Mr. Lamoreaux at the hearing that petitioner lacked motivation. A hearing on all issues should be held as a single hearing, especially due to the close potential interrelationship of the physical condition and the earning capacity. From our review of the entire file, we are convinced that the award must be, and it is set aside.

CASE and DONOFRIO, JJ., concur.