533 P.2d 675

Orville H. O'DONNELL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

J. E. Weaver Construction Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 1111.

Court of Appeals of Arizona,
Division 1,
Department C.

April 8, 1975.

Rehearing Denied May 14, 1975.

Review Denied June 17, 1975.

Charles M. Wilmer, Phoenix, for petitioner.

Edward F. Cummerford, Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel by Arthur B. Parsons, Phoenix, for respondent employer and respondent carrier.

## OPINION

STEVENS, Judge.

On 7 August 1968 Orville H. O'Donnell (petitioner) injured his right knee in an industrially related accident. His claim was accepted, surgery was performed and his claim was closed with an award of a scheduled 20% disability of his right leg. In May 1973 he filed a petition to reopen. After a hearing held on 15 November 1973 the petition to reopen was denied and the propriety of the denial is now before this Court.

The full file relative to the initial scheduled award was not before the hearing officer at the November 1973 hearing nor is it before this Court. Certain salient dates were agreed to by counsel and therefrom it appears that after procedures which are not clear, the award which is now sought to be reopened was entered on or about 24 June 1970.

Prior to the August 1968 injury the petitioner had been a cement finisher for 12 years or more. The work of a cement finisher requires constant squatting and crawling. The petitioner testified that he experienced no difficulty with his knee, or otherwise, in following his line of work prior to the 1968 injury.

After the August 1968 injury the petitioner came under the professional care of Edward P. McDermott, D. O., an orthopedic surgeon. On 31 October 1968, Dr. McDermott surgically removed the lateral meniscus from the petitioner's right knee. Although the claim appears to not have been finally closed before June 1970, it appears that the petitioner returned to his cement finisher occupation in early 1969.

An industrial episode occurred on 17 April 1973 while the petitioner was working for a different employer in the same line of work. As of that date he had been employed by his then employer for approximately four months working long hours.

From the date of the petitioner's return to work in early 1969 to April 1973, he had no difficulty in securing employment as a cement finisher and he worked rather steadily except for brief periods when his right knee and his right leg did not permit the squatting and crawling which his line of endeavor required. He saw Dr. McDermott professionally during that period of time seeking aid in relation to his right knee problem. He was never free from pain.

The 17 April 1973 episode consisted of a twisting of the right knee. At the time of the November 1973 hearing, the petitioner had not filed a new claim based on the April 1973 episode, seeking at that time to rely on his petition to reopen.

Following the April 1973 knee twisting episode, he consulted Dr. McDermott in relation to his knee, the petitioner not being able to return to his occupation. Dr. McDermott suggested the possibility of a low back problem and the petitioner did not agree asserting that he had never had a low back problem and that he believed that he did not then have one. The petitioner then consulted Elliott S. Katz, M.D., an orthopedic surgeon. Dr. Katz secured an arthrogram through the services of George A. Gentner, M.D. Dr. Gentner's report is in the file. Based upon the petitioner's history, Dr. Katz's physical examination of the petitioner and the arthrogram study, the arthrogram being a diagnostic aid, Dr. Katz testified as to his opinion that:

" * * * arthrotomy was indicated and an exploration of the knee. It seemed quite feasible that a part of the cartilage had been retained in the knee, and the only way we could be sure is to open it and take a look. This is really based on the arthrogram findings indicating that there was partial cartilage in there. And I reviewed Doctor McDermott's notes, and he stated he took the cartilage out completely, and in meniscus surgery occasionally one does leave a piece of cartilage in, and it causes problems." ·

We find a further examination of Dr. Katz as follows:

"Q. Doctor, in that letter you again repeat your recommendation that exploration of the knee and excision of what appears to be a retained posterior horn of the lateral meniscus is indicated and is probably or in my mind undoubtedly related to the industrial episode of 1968; is that correct?

"A. Yes.

"Q. Is that your opinion at the present time?

"A. Yes.

"Q. Does that type of surgery necessitate hospitalization?

"A. ⸰Yes."

Shortly before the hearing Dr. McDermott reexamined the petitioner. Dr. McDermott disagreed with the possibility that a posterior horn was present. If a posterior horn was present it would be a residual of the 1968 surgery which he performed. When Dr. McDermott was asked whether he had reviewed the arthrogram which had been performed by Dr. Gentner he replied:

"A. No. I asked Mr. O'Donnell whether he would secure the films so they could be reviewed at my office, and I had two emergency surgeries, and that kept me in surgery all day long. I don't know whether they are in my office or not. Are they? So I was not able to read them."

The presence or absence of a posterior horn cannot be determined by a physical examination alone. Exploratory surgery is the only affirmative means of establishing the presence or absence of that condition. Dr. Katz could not assure improvement but did assure the petitioner that the condition of his right knee would not be worsened by the exploratory surgery.

The petitioner was not enthusiastic about further surgery. His testimony did not rule out his consent thereto and Dr. Katz testified that the petitioner told him that he would consent.

Both doctors agreed that the petitioner has a degenerative arthritic condition in his right knee, which condition would cause problems. At one point in his testimony Dr. McDermott seemed to indicate that it was his opinion that the August 1968 industrial episode had accelerated the arthritis, but a reading of the totality of his testimony does not bear out an affirmative opinion of arthritic acceleration causally related to the August 1968 industrial episode.

The hearing officer concluded that the petitioner had not borne his burden of proving a "new, additional or previously undiscovered condition or disability attributable to his original industrial injury of August 7, 1968."

 We hold that if there was a posterior horn left in the petitioner's right knee during the October 1968 industrially related surgery, which posterior horn was first "discovered" by Dr. Katz in his examination in 1973, then the presence thereof would be an industrially related condition "previously undiscovered" warranting a reopening of the industrial claim.

It is true that Dr. McDermott held the opinion that no posterior horn remained after the 1968 surgery. Dr. Katz could not testify to a reasonable medical certainty that one was present. As our Supreme Court pointed out in Micucci v. The Industrial Commission of Arizona, 108 Ariz. 194, 494 P.2d 1324 (1972), the use of these magic words is not always essential.

In Chavarria v. The Industrial Commission of Arizona, 99 Ariz. 315, 409 P.2d 26 (1966), and in Johnson v. Industrial Commission of Arizona, 107 Ariz. 338, 487 P.2d 759 (1971), the Arizona Supreme Court recognized the use of the conditional reopening of industrial claims to verify the presence or absence of a condition which would warrant a final reopening. Chavarria, supra, was a petition where the initial industrial injury was scheduled and the conditional reopening was for the purpose of exploring the possibility of an unscheduled psychiatric problem and the causal rela-

tionship thereof. In Johnson, supra, the initial injury was an unscheduled low back problem. In the case at bar there is no contention that the petitioner's condition as of the November 1973 hearing was of an unscheduled nature.

In view of Dr. Katz's opinion, which included the consideration of the arthrogram, that exploratory surgery was indicated, we hold that Dr. McDermott's testimony without the consideration of the arthrogram did not create a medical conflict.

 We hold that there should be, at least, a conditional reopening for exploratory surgery.

The award is set aside.

NELSON, P. J., and WREN, J., concurring.