567 P.2d 343

**COLORADO RIVER INN and Travelers Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Jimmie I. White, Respondent Employee.**

**No. 1 CA–IC 1586.**

Court of Appeals of Arizona,
Division 1,
Department C.

July 21, 1977.

Burch, Cracchiolo, Levie, Guyer & Weyl, P. A. by John F. Day, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Gorey, Delaney & Flood by Edgar M. Delaney, Phoenix, for respondent employee.

## OPINION

JACOBSON, Presiding Judge.

The primary issue presented on review of this award of the Industrial Commission is whether the claimant's workmen's compensation claim should be reopened for investigative purposes (a "conditional" reopening.)

Respondent, Jimmie White, injured her back on November 7, 1972, while lifting a box of frozen chickens weighing 60–75 pounds, while in the course of her employment as a cook with petitioner, Colorado River Inn. Her claim for workmen's compensation benefits was accepted by petitioner insurance carrier and was ultimately closed effective May 31, 1974, with a finding of no permanent disability.

On April 4, 1975 respondent filed a Petition to Reopen for new, additional or previously undiscovered condition related to the industrial injury. The petition was followed by a medical report of Frank J. De-Paoli, M.D., wherein Dr. DePaoli recommended that Mrs. White's claim be reopened, at least on an investigative basis. Petitioner insurance carrier denied the petition by Notice of Claim Status and Mrs. White thereafter protested by requesting a formal hearing before the Commission.

Two hearings were thereafter convened, at which three medical witnesses and respondent herself testified. Following the hearings a decision was issued and affirmed on review, granting the Petition to Reopen on an investigative basis.

In the findings of the decision, the hearing officer referred to a conflict in the medical evidence between Dr. DePaoli and Dennis P. Gordon, M.D. The hearing officer chose to accept the testimony of Dr.

DePaoli, summarizing that testimony to be "that Doctor DePaoli found an unexplained pain with atrophy of the thigh in the appellant's left leg and recommended that she have further diagnostic studies so that Doctor DePaoli might be able to give a definitive diagnosis and that historically applicant's condition is related to her industrial injury." The hearing officer held that respondent was entitled to a reopening, on an investigative basis as recommended by Dr. DePaoli, and cited as authority for conditional reopenings, *Broadus v. Industrial Commission,* 18 Ariz.App. 429, 503 P.2d 387 (1972).

In particular, Dr. DePaoli on the issue of whether Mrs. White's condition was stationary, testified:

"Q: . . . do you have an opinion to a reasonable condition probability as to whether or not this lady's condition presently is stationary?

\* \* \* \* \* \*

"A: Mr. Gorey, I really can't answer that question because I don't have a definite diagnosis, and this is why I recommend that she have a diagnostic myelogram. I can't tell you, sir. And also a bone scan. I can't tell you whether this lady has a disk condition or she has a tumor. There are a lot of possibilities, and she needs, as far as I am concerned, a further workup."

On the crucial issue of whether Mrs. White's condition is causally related to the industrial injury, Dr. DePaoli testified:

"Q: Doctor, would you be able to tell us whether that medical condition which is ongoing is reasonably probably related to that original injury?

"A: Mr. Gorey, she gives a history of her trouble beginning with the industrial injury and tells me that she never completely recovered and has localized her symptoms to the left lower extremity. There seems to be some relationship to that historically . . . but since I don't have a definite diagnosis, I just can't be definite and tell you what is doing on.

\* \* \* \* \* \*

"I felt that there was enough there, [in industrial file] enough probability that it could be related and her case should be

reopened, so I think that there is a possibility that this could be industrially related—a definite possibility and a possible probability.

"Q: My question is, do you have an opinion to a reasonable degree of medical probability that it is related?

"A: Enough of one to justify what I said; not enough—I can't tell you. I don't have a crystal ball. All I can say is, there is a probability, but I can't answer flat out and say yes, it is related."

We believe a fair summary of Dr. DePaoli's testimony is that because he has no definite diagnosis of Mrs. White's underlying problem, he is simply unable at this time to determine what her condition is, but suspects it may be related to her prior industrial injury. Dr. DePaoli recommended a reopening on an "investigative" basis.

On the other hand, Dr. Dennis D. Gordon, who had been Mrs. White's treating physician, testified unequivocally that Mrs. White had no new or additional, previously undiscovered condition related to her industrial injury with the exception that she no longer suffered from coccydynia (a condition previously determined to be unrelated to her industrial injury.)

If this were an original proceeding to determine whether Mrs. White's condition was an industrial responsibility, it would be clear that Dr. DePaoli's testimony, because of its lack of definiteness would not be sufficient to create a medical conflict when compared to that of Dr. Gordon. *Cross v. Industrial Commission,* 81 Ariz. 222, 303 P.2d 710 (1956); *Gronowski v. Industrial Commission,* 81 Ariz. 363, 306 P.2d 285 (1957); *Lamb v. Industrial Commission,* 13 Ariz.App. 408, 477 P.2d 282 (1970). However, Mrs. White urges that where the reopening is "conditional" a lesser standard of proof is required on the causation issue, for the "conditional" reopening is to prove or disprove the causal connection. This in turn requires us to review the principle of "conditional" reopening.

The concept of a "conditional" reopening had its genesis in the case of *Broadus v. Industrial Commission, supra,* where the principle was established that an industrial carrier will be liable for investigative medical diagnostic work but the establishment of that liability "does not preclude the Commission from later determining the absence of a new and additional or previously undiscovered condition." *Id.* 18 Ariz.App. at 435, 503 P.2d at 393.

*Broadus* was subsequently followed in *O'Donnell v. Industrial Commission,* 23 Ariz.App. 367, 533 P.2d 675 (1975). *Broadus* and *O'Donnell* relied upon two Arizona Supreme Court decisions—*Chavarria v. Industrial Commission,* 99 Ariz. 315, 409 P.2d 26 (1966) and *Johnson v. Industrial Commission,* 107 Ariz. 338, 487 P.2d 759 (1971)—as authority for imposing liability upon the industrial carrier for an investigative or conditional reopening of a previously closed industrial episode.

Both *Chavarria* and *Johnson* involved awards by the Commission allowing reopening of a previous award for new, additional or previously undiscovered conditions. In *Chavarria* the new condition was a conversion hysteria and in *Johnson,* a herniated disc.

In *Chavarria,* the award contained the following language:

"That applicant is entitled to accident benefits and compensation, if indicated, from and after September 13, 1962, until further order of this Commission." *Id.* 99 Ariz. at 317, 409 P.2d at 27.

In *Johnson,* the award said:

"All medical expense incurred by applicant which this Commission may ultimately determine to be reasonably necessary to the reopening of applicant's case." *Id.* 107 Ariz. at 339, 487 P.2d at 760.

Both of these awards were not protested and became final and *res judicata.* In *Chavarria,* following a Psychiatric Advisory Board examination, the Commission classified the claimant's condition as stationary with no greater disability than was previously found under the prior closed award. The claimant protested this classification and hearings were held. At the hearing,

the claimant presented evidence that his conversion hysteria was still present and disabling. The Commission presented a doctor who testified that the claimant never suffered a conversion hysteria related to the industrial injury and that in any event, his present condition was not disabling. The court properly held that the testimony of the Commission's doctor that the claimant never suffered a conversion hysteria related to the industrial injury was precluded by the *res judicata* effect of the reopening award that established that causation. However, the court held that this same doctor's testimony concerning the claimant's present condition could be properly considered in determining whether his condition was stationary and the reopening closed with a no disability finding. The court stated:

"But, since finding Number Two [the language previously quoted] must be construed as *conditional,* the award predicated on it must be held to be a temporary disability award authorized by A.R.S. § 23–1045. Therefore, the Commission was at liberty later to determine whether petitioner's psychoneurotic disability was so disabling as to prevent him from returning to work; that is, that it was not disabling to the point of producing a loss of earning capacity." (emphasis added) *Id.* 99 Ariz. at 322, 409 P.2d at 30.

Likewise, in *Johnson,* the closing of the previous *res judicata* reopening was sought on the basis that the claimant's condition relative to his reopened industrial injury was stationary and that any continuing disability was caused by an arthritic condition unrelated to the industrial injury. The claimant urged that the reopening precluded a determination that his present condition was unrelated to the industrial episode. The court noted:

"In *Chavarria v. Industrial Commission, supra,* the wording of the award was identical to that under consideration and we held that finding number two [language previously quoted] must be construed as conditional, the award predicated on it must be held to be a temporary disability award authorized by A.R.S.

§ 23–1045, and therefore the Commission was at liberty later to determine whether petitioner was disabled so as to prevent him from returning to work." *Id.* 107 Ariz. at 341, 487 P.2d at 762.

The clear holding of both *Chavarria* and *Johnson* is that an award which reopens a claim, interpreted to award temporary benefits only (conditional), does not preclude the closing of that award with a finding that the temporary condition giving rise to the reopening has ceased and that the claimant's present condition is unrelated to the industrial injury allowing the reopening. This is a far cry from holding as *Broadus* and *O'Donnell* did that the reopening itself may depend upon whether the condition found is industrially related. In short, *Broadus* and *O'Donnell* stand by themselves for the concept of "conditional reopening."

In view of the lack of Supreme Court authority on this subject, we feel compelled to reexamine the rationale of the "conditional" reopening. The policy underlying the "conditional" reopening is to shift the expense for proving the causal relationship between an injured workman's present condition and his prior closed industrial injury to the industrial carrier by requiring it to pay for this medical proof.

Were we legislators, we might consider such a policy requirement. However, the legislature has clearly spoken on this subject. A.R.S. § 23–1061(H) provides that the employee may reopen his claim to secure additional benefits on the basis of a new, additional or previously undiscovered condition. The claim must be supported by a "statement from a physician setting forth the physical condition of the employee relating to the claim." This section goes on to provide:

"The payment for such reasonable and necessary medical, hospital and laboratory work expense shall be paid for by the employer or the employer's insurance carrier *if the claim is reopened* as provided by law and if such expenses are incurred within fifteen days of the filing of the

petition to reopen. *No surgical benefits or monetary compensation shall be payable for any period prior to the date of filing of the petition to reopen."* (emphasis added)

The clear import of this statute is to provide that if medical examinations are needed to prove the causal connection between the claimant's condition and the prior industrial injury (in the words of the statute "the physical condition . . . relating to the claim"), then the industrial carrier is liable for those expenses provided that the causal connection is established (in the words of the statute, "if the claim is reopened") and further provided these expenses were incurred within fifteen days prior to the petition to reopen.

*Broadus* and *O'Donnell* would change this legislative policy by requiring the industrial carrier to pay for investigative medical expenses regardless of whether that medical investigation proves a causal connection between present condition and prior industrial injury. *Broadus* and *O'Donnell* are not only devoid of prior judicial support, they are contrary to established legislative policy. For these reasons, we refuse to follow *Broadus* and *O'Donnell* and now hold that the judicial creature known as the "conditional" reopening has ceased to exist.

Since the hearing officer's award was based upon the existence of a "conditional" reopening, that award must be set aside.

OGG, J., and FROEB, C. J., Division 1, concur.