926 P.2d 525

James STEWART, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Double Diamond Masonry, Respondent Employer,

Aetna Casualty & Surety, Respondent Carrier.

No. 1 CA–IC 94–0153.

Court of Appeals of Arizona, Division 1, Department C.

May 7, 1996.

Reconsideration Denied June 5, 1996.

Review Denied Nov. 19, 1996.

Lawrence P. Nicholls, Phoenix, for Petitioner.

Anita R. Valainis, Chief Counsel, Industrial Commission of Arizona, Phoenix, for Respondent.

Teilborg, Sanders & Parks, P.C. by Scott H. Houston, Phoenix, for Respondents Employer and Carrier.

## OPINION

SULT, Judge.

This is a special action review of an Arizona Industrial Commission decision upon hearing and review denying James Stewart's ("Claimant") petition to reopen because he failed to prove that he requires active care.

### FACTS AND PROCEDURAL HISTORY

In September 1986, when Claimant was thirty years old, he injured his lower back in a compensable industrial accident. Surgeries resulted in fusions at L4–5 in April 1989 and in January 1991. After the second surgery, Claimant continued to complain of back and leg pain. Dr. Rand, who became the treating physician in January 1992, reported that flexion/extension x-rays showed a solid fusion. Claimant also had a lumbar myelogram and CT scan, both of which showed no evidence of disc herniation, nerve root compression, or canal stenosis. By June 1992, conflicts between Dr. Rand and Claimant developed over pain medication and Claimant changed doctors.

Relying on Dr. Rand's report, Respondent Carrier ("Aetna") closed the claim with a permanent impairment. It also authorized supportive care, including a specified amount

of pain medication each month. The Commission subsequently awarded permanent partial disability compensation.

In January 1993, Dr. Maxwell first examined Claimant. Claimant complained to Dr. Maxwell of pain but was "ambivalent" about having further surgery. Dr. Maxwell interpreted x-rays to show movement above the fixation devices and lack of bone formation on the sides of the devices. He concluded that:

> The CT scan done in 1992 does not seem to address ... whether or not the fusion is solid and I do not have the films, so it is uncertain whether that has been substantiated or not. The fact that he wears his brace all of the time which is the only thing that gives him relief, that and lying down on a heating pad, would indicate to me that he has a clinically unstable fusion which was verified on the x-rays taken today. It is my feeling that the patient has ongoing pseudoarthrosis. ... He will also need tomograms done of the fusion mass. It is my best guess that the patient is not stationary and that he likely would benefit from additional evaluation and probable 2 in 1 type surgery to include the L4–5 segment as well as the 5–1 segment.

In July 1993, Claimant filed a petition to reopen and supported it with Dr. Maxwell's January 1993 report. Aetna denied reopening and Claimant timely requested a hearing. Pending the hearing, Dr. Rand examined Claimant for Aetna. Dr. Rand reported that Claimant stated that "he feels the same as when I last saw him in June, 1992" and that he did not want to have additional surgery. Dr. Rand found no evidence of "new problems" and recommended only continued supportive care.

Hearings ensued for testimony by Claimant and Drs. Rand and Maxwell. Claimant testified that his symptoms had worsened since June 1992 and that he had increased the dosage of pain medications because of the worsened symptoms. He could not recall telling Dr. Rand in November 1993 that his symptoms had not changed since June 1992, and Claimant testified that his symptoms had continued to worsen since he saw Dr. Rand. Because of these increased symptoms, Claimant now would have additional surgery if Dr. Maxwell recommended it.

Dr. Maxwell testified that Claimant had complained of progressively worsening back and leg symptoms. Although Claimant initially refused to consider further surgery, he told Dr. Maxwell on December 30, 1993, that he would consider surgery because of the worsened symptoms. Dr. Maxwell now recommended diagnostic testing, including tomograms, a sonogram, and a CT scan, to determine whether additional treatment is necessary. He explained that Claimant possibly has a pseudoarthrosis or facet hypertrophy and that he would perform surgery only if diagnostic testing confirmed that Claimant has either of these conditions. Even without diagnostic testing, however, Dr. Maxwell testified that Claimant's symptoms are related to his industrial injury. Furthermore, these causally related symptoms in turn justify diagnostic testing to determine the extent of Claimant's current condition.

Dr. Rand testified that Claimant was objectively unchanged between June 1992 and November 1993 and had stated that he was subjectively unchanged as well. Furthermore, even if Claimant now complained of worsened symptoms, Dr. Rand concluded that further testing is unjustified because Claimant had complained of worsening symptoms when Dr. Rand was treating him in 1992 and diagnostic testing in 1992 was negative.

The ALJ then issued the decision upon hearing denying reopening. Although she accepted Dr. Maxwell's testimony that "the need for testing is due to [Claimant's] increase in pain which is related to the 1986 industrial injury," she also found that Dr. Maxwell did "not know whether [Claimant] will need further treatment; he could not make such a recommendation without the test results." The ALJ then concluded that Dr. Maxwell's opinion was legally insufficient to support reopening, stating:

> It is found that the opinion of Dr. Maxwell is more probably correct and well-founded. A Petition to Reopen may be granted when pain requires active medical treatment. *Tarpy v. Industrial Comm'n*, 138 Ariz.

395, 397, 675 P.2d 282 (App.1983). However, A.R.S. § 23–1061(H) does not authorize "conditional" reopening for investigative purposes to determine if additional treatment is required. *Colorado River Inn v. Industrial Comm'n*, 116 Ariz. 27, 567 P.2d 343 (1977). Here, Dr. Maxwell testified that although the pain is causally related to the industrial injury, he cannot determine whether additional treatment is required until the medical tests are completed. Depending upon the test results, there may or may not be treatment recommended. Therefore, the Petition to Reopen is denied.

Claimant requested review and Aetna summarily responded. A substituted ALJ affirmed the denial of reopening without modification and Claimant brought this special action.

## DISCUSSION

■ On review, Claimant asserts that he is entitled to reopen for diagnostic testing that is absolutely rather than conditionally related to increased pain from the industrial injury. We agree.

The applicable statute is Arizona Revised Statutes Annotated ("A.R.S.") section 23–1061(H) (1995) which provides in pertinent part:

An employee may reopen his claim to secure an increase or rearrangement of compensation or additional benefits by filing with the commission a petition requesting the reopening of his claim upon the basis of new, additional or previously undiscovered temporary or permanent condition. . . .

In *Sneed v. Industrial Comm'n*, 124 Ariz. 357, 604 P.2d 621 (1980), our supreme court set forth a two prong test to determine whether a claimant had satisfied the requirements of this statute: [1]

A claimant seeking to reopen has the burden of showing by a preponderance of the evidence the presence of a new, additional or previously undiscovered temporary or

permanent condition and a causal relationship between the new disability and the prior industrial injury.

*Id.* at 359, 604 P.2d at 623.

As for the first prong, this court held in *Tarpy v. Industrial Comm'n*, 138 Ariz. 395, 675 P.2d 282 (App.1983) that an increase in subjective pain which results in securing any benefits under the Workmen's Compensation Act is sufficient to support reopening a claim, even though the pain is unaccompanied by a change in objective physical findings. *Id.* at 397, 675 P.2d at 284. This principle was adopted and followed by the supreme court in *Bill Breck Dodge, Inc. v. Industrial Comm'n*, 138 Ariz. 388, 675 P.2d 275 (1983), which held:

Increased pain, though subjective, requiring new or additional medical treatment, is a sufficient basis for reopening.

*Id.* at 391, 675 P.2d at 278. In this case, the ALJ, in adopting Dr. Maxwell's opinion, relied on *Tarpy* and therefore impliedly found that Claimant met the first prong of the *Sneed* test.

The ALJ did not cite *Sneed* in her findings and therefore apparently overlooked the language in *Sneed* describing the second requirement for reopening. Notwithstanding that Dr. Maxwell's testimony clearly established that Claimant's pain was causally connected to his prior compensable injury (the second *Sneed* requirement) the ALJ denied the petition. In so doing, the ALJ relied on *Colorado River Inn v. Industrial Comm'n*, 116 Ariz. 27, 567 P.2d 343 (App.1977) which held that a claimant who had not established a causal connection between the alleged new condition and the prior compensable injury could not reopen to obtain the medical evidence which might establish that connection. The ALJ apparently felt that what Claimant sought here was the "conditional reopening" disapproved in *Colorado River Inn.*

We believe the ALJ's reliance on *Colorado River Inn* is misplaced. That case's mandate, that a nexus be established between the new condition and the prior injury in order to

---

1. A portion of subsection (H) was amended in 1990 but this did not include the portion quoted

and construed in *Sneed.*

reopen, is limited to a showing of a causal connection between the two. It does not extend to requiring that a claimant also show that a particular type of treatment, or even any treatment, is necessary in order to justify reopening. *Sneed* addressed this very point, stating:

> Petitioner need not show he is in need of active treatment in order to reopen his claim. He need only show the existence of a new, additional or previously undiscovered condition. The medical benefits available or the appropriate treatment for the ... condition ... can be appraised *after the claim has been reopened.*

124 Ariz. at 359, 604 P.2d at 623 (emphasis added).

■ The ALJ was apparently concerned that what Claimant was seeking in the way of "treatment" was diagnostic testing designed to determine whether additional surgery would benefit him. However, as *Sneed* teaches, the appropriateness of the treatment or its availability is to be addressed after reopening.[2] Such considerations cannot weigh in the decision whether a claimant has satisfied his burden to reopen. If the benefit being sought is arguably one which is not required to be covered under the Workmen's Compensation Act, that determination will be made in proceedings following reopening.

### CONCLUSION

The testimony of Dr. Maxwell was accepted by the ALJ and that testimony sufficed to satisfy Claimant's burden of proving justification for reopening his claim. The ALJ erred by ruling to the contrary and for that reason we set aside the award.

FIDEL, P.J., and LANKFORD, J., concur.

---

2.  In this connection, there is not, to our knowledge, an Arizona case which directly holds that the diagnostic testing of the type sought here is available as a benefit under an open claim. However, reputable authority indicates this is so in some jurisdictions and we see no reason why Arizona would hold to the contrary. *See* 2 Arthur Larsen, *The Law of Workmen's Compensation* § 61.12(h) at 10–897 n. 57.1 (1995) (citing cases requiring coverage of diagnostic testing even when test result is negative).